# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KRISTE GOAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No: 3:13-01102 |
| v. ) | Judge Campbell/Brown |
| ) | |
| LANCE J. LEWIS and LEWIS ) | |
| CAPITAL, INC., ) | |
| ) | |
| Defendants. ) | |

To: The Honorable Todd J. Campbell, United States District Judge

## REPORT AND RECOMMENDATION

Before the Court is the defendants' Motion for Summary Judgment with a Memorandum in Support, and statement of undisputed facts (Docket Entry (DE) 53-54). The plaintiff responded. (DE 59-60).[1] The defendants replied (DE 71-72).[2] The undersigned presumes familiarity with the facts (*See* DE 90) and, as set out below, **RECOMMENDS** that the Court **GRANT** the defendant's motion regarding the claim for negligence (Count IV) and the claim for violation of the Investment Advisors Act (IAA) (Count V). The undersigned **RECOMMENDS** that the Court **DENY** the defendant's motion regarding the claim for violation of the Tennessee Securities Act (TSA) (Count I); breach of fiduciary duty (Count II); breach of contract (Count III); failure to prove damages; the affirmative defenses, and the claim for indemnification.

### I.      Legal Standard

"Summary judgment is proper if . . . there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Adams v. Rockafellow,* 66 F. Appx. 584, 585 (6th Cir. 2003) (citing FED. R. CIV. P. 56(c)). A factual dispute is material if it "might

---

[1] The plaintiff also filed a statement of additional material facts, a declaration, a declaration of the plaintiff's "liability and damages expert," sealed accounting statements, and over 1,000 pages of appendixes. (DE 61-67).

[2] The defendants also filed over 800 pages of appendixes in support of the instant motion (DE 55-56).

affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case." *Adams,* 66 F. Appx. at 585 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has met its burden . . . the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment." *Adams,* 66 F. Appx. at 585 (citing *Anderson,* 477 U.S. at 248-49; *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir. 1993)).[3] "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The standard for summary judgment is essentially the same under Texas law. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985).

**II.     Analysis**

The defendants seek summary judgment, arguing: (A) the economic loss rule bars the negligence and breach of fiduciary duty claims; (B) no evidence supports applying the IAA; (C) under the TSA, there is no evidence that the plaintiff relied on misrepresentations; (D) the plaintiff has not shown that the defendants breached any legally enforceable part of the Investment Advisory Agreement (Agreement); and (E) a "properly managed account" theory is not viable. (DE 53). The defendants also raise three affirmative defenses and seek indemnification (F).

---

3 FED. R. CIV. P. 56(C)(1)(A)-(B). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

  **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

  **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

The parties dispute whether Texas or Tennessee law applies. The Court, in diversity, "examine[s] Tennessee's choice of law rules for each substantive legal issue . . . ." *Roberts v. Fin. Tech.,* No. 3:06-0055, 2007 WL 3125289, at *4 (M.D. Tenn. Oct. 23, 2007) *aff'd sub nom. Roberts v. Fin. Tech. Ventures, L.P.,* 320 F. App'x 350 (6th Cir. 2009). Texas law applies to the contract claims.[4] Texas law also applies to the tort claims herein because they are related to and arise from the Agreement, and concern the defendants' action pursuant to the Agreement, not his representations made before forming the Agreement.[5]

### A.  Negligence Claim (Count IV) and Breach of Fiduciary Duty Claim (Count II)

The parties dispute whether the plaintiff can recover in tort due to the economic loss rule (DE 53, pp. 6-7; DE 59, p. 13).

The economic loss rule is implicated when the following elements combine: a contract, economic loss such as lost profits, no personal injury or property damage, and a claim that the defendant breached a duty which exists by virtue of the contract and not by virtue of an independent duty at law. *See LAN/STV v. Martin K. Eby Const. Co.,* 435 S.W.3d 234, 235-44 (Tex. 2014); *Trebuchet Siege Corp. v. Pavecon Commercial Concrete, Ltd.,* No. 05-12-00945-CV, 2014 WL 4071804, at *6 (Tex. App. Aug. 19, 2014). "[T]he underlying purpose of the economic loss rule is to preserve the distinction between contract and tort theories . . . ." *LAN/STV,* 435 S.W.3d at 240 (citation omitted).

---

4 *SCA Tax Exempt Fund Ltd. P'ship v. Kahn,* 974 F.2d 1339, at *2 (6th Cir. 1992) (The "law of the state contemplated by the parties" governs contract claims.).

5 The Agreement provides that it will be "***governed by and construed in accordance*** with the internal laws of the State of Texas . . . ." (DE 31-1, p. 5) (emphasis added). In *Banek*, the Court found than an Agreement which read "shall be ***governed by and construed in accordance*** . . . ." was broad enough to cover fraud and misrepresentation claims. *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993) (emphasis added). The Court relied on *Moses* in which an agreement was also broadly construed where it read that "the construction thereof shall be governed by the laws of . . . ." *Moses v. Bus. Card Exp., Inc.,* 929 F.2d 1131, 1139 (6th Cir. 1991). *Banek* and *Moses* were not applied in *Boydstun Metal Works, Inc.* where the plaintiff was "seeking damages incurred as a result of Defendant's failure to live up to its representations…made before the parties entered into the Contract [that stood] separate and apart from the Contract . . . ." *Boydstun Metal Works, Inc. v. Parametric Tech. Corp.,* No. CIV. 99-480-AS, 1999 WL 476265, at *4 (D. Or. May 19, 1999). The Court found that "[u]nlike those in *Moses* . . . the fraud claims alleged by Plaintiff are non-contractual and are merely incidental to the contractual relationship . . . ." *Boydstun Metal Works, Inc.,* No. CIV. 99-480-AS, 1999 WL 476265, at *4.

> In deciding whether the rule applies, [the Court will] examine the source of the defendant's duty (considering whether the duty arose out of a contract or whether the duty was imposed by law, independent of the contract) and the nature of the injury (considering whether the economic loss was only "to the subject of a contract itself"). ***Where the only duty between parties arises from a contract, a breach of that duty will ordinarily sound only in contract, not in tort.***

*Trebuchet Siege Corp.,* No. 05-12-00945-CV, 2014 WL 4071804, at *6 (emphasis added). The economic loss rule does not apply in *most* tort claims.[6] However, it does apply to negligence claims. "[I]f a contractual duty is negligently performed, causing only economic loss, only a breach of contract action may be maintained, and an action in tort for negligence is precluded." *Trebuchet Siege Corp.,* No. 05-12-00945-CV, 2014 WL 4071804, at *6. In other words, "when a party must prove the contents of its contract and must rely on the duties created therein, the action is…an action *on the contract,* even though it is denominated an action for negligent performance of a contract." *Bass v. City of Dallas,* 34 S.W.3d 1, 9 (Tex. App. 2000) (citation and internal quotation omitted). Moreover, "[w]hen the loss is only the economic loss to the subject of the contract…the action sounds in contract alone." *Bass,* 34 S.W.3d 1, 9 (Tex. App. 2000).[7]

However, the Supreme Court of Texas has found that economic loss is commonly recoverable in breach of fiduciary duty claims. *See Sharyland Water Supply Corp.*, 354 S.W.3d at 418. Moreover, the Court of Appeals in Texas has declined to extend the economic loss rule to breach of fiduciary duty claims. *See Fleming v. Kinney ex rel. Shelton*, 395 S.W.3d 917, 924

---

6 *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex. 2011) (discussing "tort claims for which courts have allowed recovery of economic damages even absent physical injury or property damage. *See, e.g.,* [*Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998)]; *see also* Powers & Niver, 23 Tex. Tech L.Rev. at 492 (noting that "the 'economic loss' rule has never been a general rule of *tort* law; it is a rule in *negligence* and *strict product liability*" and observing that "[p]ure economic loss is commonly recoverable in certain torts" [including]…negligent misrepresentation, legal or accounting malpractice, breach of fiduciary duty, fraud, fraudulent inducement, tortious interference with contract, nuisance, wrongful death claims related to loss of support from the decedent, business disparagement, and some statutory causes of action.").

7 *LAN/STV,* 435 S.W.3d at 243 (The Courts of Appeals in Texas "have uniformly applied the economic loss rule to deny recovery of . . . economic losses in actions for negligent performance of ***services*** . . . ." although claims for negligent performance of *legal* services have been allowed. The rationale for this exception supports allowing negligence claims against other professionals, including accountants and engineers. However, the Supreme Court of Texas has not given a list of professionals to whom the exception applies, stating, "application of the rule depends on an analysis of its rationales *in a particular situation*." The plaintiff does not raise the issue of an exception.).

(Tex. App. 2013), *review denied* (Dec. 13, 2013). The defendants argue that the Court in *Kline* found that a plaintiff's claim for breach of fiduciary duty was "nothing more than a claim for breach of contract." (*Kline v. O'Quinn*, 874 S.W.2d 776, 789 (Tex. App. 1994), *as supplemented on denial of reh'g* (May 12, 1994), *writ denied* (Dec. 1, 1994)). However, the Court also found that a "fiduciary duty arises from the relationship of . . . parties and not just from [a] contract." *Kline*, 874 S.W.2d at 789. Yet, as the Court clarified, the plaintiff failed to "allege the existence of a confidential relationship which would give rise to a fiduciary duty outside of the parties' contract . . . [and therefore] failed as a matter of law to state a cause of action for breach of fiduciary duty and was barred from recovering punitive damages on that ground." *Kline*, 874 S.W.2d at 789. Here, however, the plaintiff cites U.S. Securities and Exchange Commission (SEC) fiduciary duties for investment advisors and the undersigned finds that this distinguishes the facts herein from *Kline* (DE 59, pp. 11-12).

Here, the alleged injury is economic loss at the heart of the contract since the plaintiff seeks compensatory as well as exemplary damages plus fees and interest. (DE 30, p. 9). The plaintiff does not allege any personal or property damages. The pivotal question is whether the duty of care or the duty of a fiduciary arises from the contract or exists at law. The question of a duty is a question of law, generally.[8]

In regard to the negligence claim, the claim is that the defendant breached a duty of care by investing in products that were unsuitable for the plaintiff. (DE 30, p. 8). The undersigned finds that this duty of care arose from the contract alone. In regard to the fiduciary duty claim, the claim is, similarly, that the defendant breached a fiduciary duty by investing in products that

---

8 *Stuth v. Brixmor Watson Glen, LLC*, No. 3:12-CV-1317, 2014 WL 3672111, at *5 (M.D. Tenn. July 22, 2014) (citation omitted) ("The existence of a duty is a question of law to be determined by the court . . . . However, in some circumstances, the nature of the duty a defendant may owe a plaintiff is dependent upon the resolution of certain factual issues.").

were unsuitable. (DE 30, pp. 6-7). However, the undersigned finds that this duty is independent of the contract, pursuant to SEC fiduciary duties, as the plaintiff cites. (DE 59, p. 11).

Therefore, the undersigned finds that the economic loss rule precludes the negligence claim, but does not preclude the breach of fiduciary duty claim. Therefore, summary judgment for the negligence claim (Count IV) should be **GRANTED** and that claim should be dismissed. However, summary judgment for the breach of fiduciary duty claim (Count II) should be **DENIED** and that claim should not be dismissed.

### B. Investment Advisor's Act[9] (Count V)

The defendants argue that the plaintiff cannot establish a claim for breach of the IAA, 15 U.S.C. § 80b-6 (Section 206) and 15 U.S.C. § 80b-15 (Section 215). (DE 53, p. 8). The plaintiff seeks rescission, fees, and damages beyond the management fees. (DE 30, p. 8; DE 59, p. 15).

Under the IAA, there is no private right of action in Section 206 and the only limited right is to void an investment contract under Section 215. *See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 24 (1979). The "customary legal incidents of voidness would follow, including . . . rescission . . . ." *Transamerica Mortgage Advisors, In.*, 444 U.S. at 19. "Where rescission is awarded, the rescinding party may of course have restitution . . . . Restitution would not, however, include compensation for any diminution in the value of the rescinding party's investment . . . ." *Transamerica Mortgage Advisors, Inc.,* 444 U.S. at n. 14.

Therefore, the plaintiff cannot recover a diminution in value of funds. However, if there was a violation of the IAA, pursuant to the prohibitions in Section 206, the plaintiff could seek restitution. The fact that the contract has already ended does not bar this. *See Norman v. Salomon Smith Barney, Inc.,* 350 F. Supp. 2d 382, 389 (S.D.N.Y. 2004). Section 206 prohibits fraudulent, manipulative, deceptive, or self-dealing actions on the part of an advisor. 15 U.S.C. § 80b-6.

---

9 *Transamerica Mortgage Advisors, Inc. (TAMA,* 444 U.S. at, 12-13 (1979) ("The [IAA] was enacted to deal with abuses that Congress had found to exist in the investment advisers industry.").

However, as the defendants argue, the complaint contains no allegation, much less evidence of fraud or deceit. (DE 53, p. 10). The issue here is whether the defendants established the absence of evidence to support a claim for violation of the IAA. The defendants have done so and the plaintiff has failed to provide evidence of fraudulent activity or activity that would otherwise violate Section 206. In her response, the plaintiff reiterates that the defendants "violated…[an] affirmative obligation to . . . employ reasonable care to avoid misleading [the plaintiff] . . . ." (DE 59, p. 15). The point is not that the plaintiff needed to use the magic words "fraud," "deceit," or "manipulate." Instead, she needed to present evidence to support a claim that the defendant engaged in such activities. The plaintiff failed to do so. Therefore, the undersigned finds that summary judgment for the IAA claim (Count V) should be **GRANTED** and that claim should be dismissed.

### C. Tennessee Securities Act (Count I)

The parties dispute whether the plaintiff relied on purported misrepresentations in the Agreement that would establish a claim under TENN. CODE ANN. § 48-1-121(a)(2). (DE 53, p. 12; DE 59, p. 13). Under the TSA, "[i]t is unlawful for any person, in connection with the offer, sale or purchase of any security in this state . . . to . . . (2) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." TENN. CODE ANN. § 48-1-121(a)(2). "[T]he test of reliance is whether the misrepresentation is a substantial factor in the plaintiff's investment decision . . . ." *Green v. Green,* 293 S.W.3d 493, 511 (Tenn. 2009) (citation omitted).

Here, there is a genuine issue of material fact as to whether the plaintiff relied on misrepresentations. The defendants have not established an absence of evidence. They do raise a salient point, however. The defendants argue that the plaintiff could not have relied on purported

misrepresentations *in the Agreement*, as evidenced by the fact that she expressed her decision to invest with the defendants on August 11, 2011 prior to signing the Agreement on September 02, 2011 or receiving the Form ADV. (DE 71, p. 5; DE 55-9, p. 32 (L. App. 432)). However, the plaintiff disputes that the Agreement or Form ADV are the sole source of misrepresentations and states that the defendants outright "failed to inform her of the risks associated with investing in gold . . . ." (DE 60, pp. 23-24). She cites her deposition and her testimony that the defendants "stated that, although he currently was 'weighted' in gold and gold equities, he would invest in financial products other than gold and gold equities if it was necessary for a client." (DE 60). Moreover, she declares that although she "understood gold was to be a component of her investment strategy, she relied on [the defendant] to determine how much of a component would be suitable." (DE 60, p. 4; DE 62, p. 2). She states that although she had access to statements as well as online accounts and received a confirmation when the defendants completed a trade on her behalf, "she relied on [the defendants'] supposed expertise, advice, and guidance." (DE 60, pp. 13-14). Finally, she declares that she would not have allowed the defendant to manage her money had she been properly informed. (DE 62, p. 2). Therefore, the undersigned finds that summary judgment for the TSA claim (Count I) should be **DENIED** and that claim should not be dismissed.

### D. Breach of Contract (Count III)

The parties dispute whether the Form ADV provisions are enforceable and whether the the defendants breached them. (DE 53, p. 16; DE 59, pp. 15-19).[10]

---

10 The disputed provisions are Part II, page 5, Item II A&B and Part Q, Page 6 Item 12A and 12B:

> With respect to account performance, Lewis Capital reviews each account on a quarter basis, and compares each investment on a transaction basis to insure that each transaction is: (i) suitable for the respective client's investment objectives; (ii) meets that client's quality standards; and (iii) to make sure that their investment objectives are still pertinent to the managed account arrangement.
>
> Individual securities are selected to provide diversification among economic sectors and industries which are chosen to achieve the [desired] balance between expected risk and expected return. Transactions of an unusual nature are discussed with clients before execution.

In Texas, "[i]t is uniformly held that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged." *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968). "When construing a contract, [the Court's] primary goal is to determine the parties' intent as expressed in the terms of the contract . . . ." *Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies,* 409 S.W.3d 181, 189 (Tex. App. 2013). In terms of documents incorporated by reference, "the referring language in the original document must demonstrate the parties intended to incorporate all or part of the referenced document." *Bob Montgomery Chevrolet, Inc.,* 409 S.W.3d at 190.

Here, the clause in the Agreement pertaining to Form ADV reads, "[s]imultaneous with the execution of this Agreement, the Advisor has delivered Part II of Form ADV…Client acknowledges receipt . . . ." (DE30-2, p. 5). Moreover, the clause reads, "[f]or the purposes of this provision, a contract is considered entered into when all parties to the contract have signed the contract . . . ." (DE 30-2, p. 6). Therefore, the undersigned finds that the parties intended the Form ADV to be incorporated into the Agreement. However, there is a genuine issue of material fact as to whether the defendants breached provisions in the Form ADV. The defendants have not shown an absence of evidence to this point. Moreover, the plaintiff has presented evidence from a liability and damages expert to support her claim that the defendants' actions were "clearly speculative, unsuitable and a direct violation of Ms. Goad's instruction not to use leverage . . . [resulting] in losses of $20,232." (DE 63-1, p. 11).[11] Therefore, in light of this evidence, the undersigned finds that summary judgment for the breach of contract claim (Count III) should be **DENIED** and that claim should not be dismissed.

---

11 The defendants contest the understanding of the term leverage. (DE 71, pp. 7-8). It does not change the analysis.

### E. Properly Managed Account Theory

The parties' dispute boils down to the defendants arguing that the plaintiff has not proven the element of damages and the plaintiff arguing that she has. (DE 53, p. 14; DE 59, p. 21). "In order to prevail on summary judgment on the ground that [the plaintiff] failed to offer any proof of damages, [the defendants] must have introduced evidence to disprove the element of damages." *Kluge v. Planned Behavorial Health Care, Inc.,* No. 05-94-00050-CV, 1994 WL 500745, at *1 (Tex. App. Sept. 6, 1994), *writ denied (Mar. 9, 1995).* The defendants have not done so. Instead, they have argued that the "properly managed account" theory of damages is not viable. (DE 53, p. 14). However, at a minimum there is a genuine question of fact as to the proof of damages. Therefore, the undersigned finds that summary judgment for a lack of damages evidence at this stage in the case should be **DENIED.**

### F. Affirmative Defenses and Indemnification

The defendants assert three affirmative defenses and seek indemnification. (DE 53, p. 18; 23). They argue that the plaintiff materially breached the Agreement, thereby barring her breach of contract claim. (DE 53, p. 19). They argue that the plaintiff, despite the terms of the Agreement, failed to notify the defendants of her change in investment objectives, thereby waiving her right to recover under a breach of contract. (DE 53, p. 20). Finally, they argue that there is incontrovertible evidence that the plaintiff ratified the defendants' conduct and transactions that were taken pursuant to the Agreement. (DE 53, p. 22). However, each of these arguments turns on the interpretation of the Agreement. The Magistrate Judge has previously addressed this issue, determined that the underlying Agreement is ambiguous, and determined that these disputes are not purely legal disputes. (DE 93; DE 99, p. 2). Therefore, the undersigned finds that summary judgment on these defenses and for indemnification should be **DENIED.**

### III. Conclusion

For the reasons explained herein, the undersigned **RECOMMENDS** that the Court **GRANT** the defendant's motion in part and **DENY** it in part. The undersigned **RECOMMENDS** that the Court **GRANT** the defendant's motion regarding the claim for negligence (Count IV) and the claim for violation of the IAA (Count V). The undersigned **RECOMMENDS** that the Court **DENY** the defendant's motion regarding the claim for violation of the TSA (Count I); breach of fiduciary duty (Count II); breach of contract (Count III); failure to prove damages; the affirmative defenses, and the claim for indemnification.

The parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. FED. R. CIV. P. 72(b)(2). A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. FED. R. CIV. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 21st day of November, 2014

/s/Joe. B. Brown_____
Joe B. Brown
United States Magistrate Judge